UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE BENARD WASHINGTON,<br><br>    Plaintiff,<br><br>    vs.<br><br>HICKS, et al.,<br><br>    Defendants. | 1:19-cv-00156-NONE-GSA-PC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO MODIFY DISCOVERY AND SCHEDULING ORDER**<br>**(ECF No. 44.)**<br><br>**ORDER EXTENDING DISCOVERY DEADLINE AND DEADLINE TO FILE DISPOSITIVE MOTIONS FOR ALL PARTIES**<br><br><u>**New Discovery Deadline**</u>**:**     **August 6, 2021**<br><br><u>**New Dispositive Motions Deadline**</u>**: October 6, 2021** |

## I. BACKGROUND

Tracye Benard Washington ("Plaintiff") is a state prisoner proceeding *pro se* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's Complaint filed on February 5, 2019, against defendants Sergeant David Hicks and Correctional Officer Hipolito Rocha ("Defendants") for use of excessive force in violation of the Eighth Amendment. (ECF No. 1.)[1]

---

[1] On June 22, 2020, the court issued an order dismissing all other claims and defendants from this action, based on Plaintiff's failure to state a claim. (ECF No. 19.)

1

On December 8, 2020, the court issued a Discovery and Scheduling Order, establishing pretrial deadlines, including a discovery deadline of May 8, 2021, and a dispositive motions deadline of July 8, 2021. (ECF No. 28.) On January 19, 2021, the court issued an order extending the application of the Discovery and Scheduling Order to defendant Hicks.[2] (ECF No. 36.)

On May 7, 2021, defendant Rocha filed a motion to modify the court's Discovery and Scheduling Order. (ECF No. 44.) On May 10, 2021, defendant Hicks joined defendant Rocha's motion. (ECF No. 45.)

## II. MOTION TO MODIFY SCHEDULING ORDER

Modification of a scheduling order requires a showing of good cause, Fed. R. Civ. P. 16(b), and good cause requires a showing of due diligence, Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of the order. Id. The court may also consider the prejudice to the party opposing the modification. Id. If the party seeking to amend the scheduling order fails to show due diligence the inquiry should end and the court should not grant the motion to modify. Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

Defendants Rocha and Hicks request a ninety-day extension of the discovery and dispositive motions deadlines in the court's Discovery and Scheduling order because of Plaintiff's failure to cooperate in his deposition and refusal to answer essential questions regarding the material facts, witnesses, and documents in this case. Defendants assert that despite their efforts to meet the discovery cut-off date it was not apparent until Plaintiff's deposition that the deadline could not be met without prejudicing Defendants. Defendants request that the current deadlines be modified so they may obtain and review the deposition transcript, serve follow-up written discovery, and file any further motions to compel.

///

///

---

[2] Defendant Rocha filed an answer to the complaint on December 7, 2020, and defendant Hicks filed an answer to the complaint on December 23, 2020. (ECF Nos. 27, 36.)

David C. Goodwin, California Deputy Attorney General and counsel for defendant Rocha, filed a declaration describing Plaintiff's conduct at his deposition held on May 5, 2021, which lasted approximately seven hours:

> "Plaintiff refused to discuss his basic criminal history, such as his prior criminal convictions and dates, aside from his current commitment offense. (Goodwin Decl. ¶ 6.)
>
> During a brief break, and immediately after the deposition was off record, Plaintiff called me a 'retard.' (Goodwin Decl. ¶ 7.) I then called the deposition back on record to memorialize the event, and two correctional officer witnesses confirmed that they heard Plaintiff state that word. (Id.)
>
> At one point, Plaintiff physically moved his webcam so that no one could see him. (Id. ¶ 8.) I then had to ask the attending correctional officers to adjust the camera so that Plaintiff was visible. (Id.)
>
> Throughout the deposition, Plaintiff repeatedly called me 'Mr. Chauvin' and 'Derek Chauvin,' in reference to the Minneapolis police officer who was convicted of the infamous murder of George Floyd. (Id. ¶ 9.) Addressing the correctional officers who were present at the deposition, Plaintiff told them that I 'look like Derek Chauvin.' (Id.) Plaintiff also responded to questions by telling me to 'get off his neck,' in another reference to Chauvin's murder of George Floyd. (Id.)
>
> Plaintiff also made references that he was pleased to finally see what I 'look like,' in a suggestive manner which I interpreted as veiled threats. (Id. ¶ 10.) Plaintiff called me a racist, a 'silly rabbit,' and a 'proud boy,' and remarked that I should 'storm the Capitol.' (Id. ¶ 11.) Plaintiff asked rhetorical questions regarding how long I have been practicing law and accused me of being unprofessional. (Id. ¶ 12.) Plaintiff's statements were demeaning and offensive, and obstructed my ability to conduct a meaningful deposition. (Id. ¶ 13.) Plaintiff also repeatedly yelled at me, and over me, while I tried ask questions or to make

1 | a record, and he ignored the court reporter's admonishments that she could not record all of the testimony. (Id.)

Plaintiff also impeded, delayed, and frustrated the examination of identifying documents that support his claims. (Goodwin Decl. ¶ 14.) For example, when asked what documents support his claims, he referred to 'law and facts.' (Id.) He also made vague references to 'reports' and 'medical records,' but frustrated and delayed further questioning to identify specific documents by going on extensive, non-responsive tangents. (Id.)

Plaintiff similarly refused to identify witnesses that support his claims. (Id. ¶ 15.) When questioned regarding people who might have information regarding the subjects of this lawsuit, he frustrated and delayed the examination by responding facetiously, listing George Floyd and religious figures such as God, Jesus Christ, Yahweh, and others. (Id.) He also stated that he had a list of Egyptian gods when asked to identify witnesses. (Id.) Plaintiff similarly frustrated questioning regarding his damages, by going on extensive, non-responsive tangents, arguments, or diatribes, despite my repeated efforts to get the examination back on topic." (Id. ¶ 16.)

(Decl. of David Goodwin, ECF No. 44-2 at 2 ¶ 6 – 3 ¶ 16.)

Cecilia Martin, counsel for defendant Hicks, who also attended the deposition, also filed a declaration in support of the motion to modify the scheduling order:

"While Plaintiff provided extensive information in response to some of Mr. Goodwin's questions, the majority was only tangentially connected to the subject matter at hand. Within a matter of hours, it became clear that Plaintiff would not permit his deposition to be taken by Mr. Goodwin as Plaintiff talked over Mr. Goodwin and provided responses to Mr. Goodwin's questions which largely consisted of vague references to reports and other and/or records which allegedly supported his claims (Plaintiff refused to give direct information as to any report or record), references to 'God,' and 'Yahweh' as witnesses that

Plaintiff claims he intends to call at trial, and various insults directed at Mr. Goodwin both personally and professionally. (Martin Decl., ¶ 5.)

Particularly alarming was Plaintiff's statements concerning Mr. Goodwin's alleged likeness to Derek Chauvin, the Minneapolis police officer who was recently found guilty of murder for causing the death of Mr. George Floyd. (Id. ¶ 6.) Indeed, Plaintiff repeatedly yelled at Mr. Goodwin to 'get off my neck' and made other references indicating what appeared to be Plaintiff's belief that Mr. Goodwin is racist, in response to Mr. Goodwin's general questions regarding the matters at issue in Plaintiff's case. (Id.) Plaintiff's statements displayed what appeared to be a particular hostility or animus towards Mr. Goodwin. (Id.) This resulted in the frustration of the entire deposition as the majority of questions were left unanswered after hours of examination." (Id.)

(Decl. of Cecilia Martin, ECF No. 45-1 at 2-3 ¶¶ 5 – 6.)

Based on the above, the court finds good cause to extend the discovery and dispositive motions deadlines in the court's Discovery and Scheduling order. Defendants have shown that even with the exercise of due diligence they cannot meet the requirements of the court's Discovery and Scheduling Order. Therefore, the motion to modify the Discovery and Scheduling Order filed by defendant Rocha and joined by defendant Hicks shall be granted.

### III. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant Rocha's motion to modify the court's Discovery and Scheduling Order, filed on May 7, 2021, and joined by defendant Hicks on May 10, 2021, is GRANTED;

2. The deadline for the completion of discovery is extended from May 8, 2021 to **August 6, 2021** for all parties to this action;

3. The deadline for filing and serving pretrial dispositive motions is extended from July 8, 2021 to **October 6, 2021** for all parties to this action; and

///

4. All other provisions of the court's December 8, 2020 Discovery and Scheduling Order remain the same.

IT IS SO ORDERED.

    Dated: **May 12, 2021**      **/s/ Gary S. Austin**
                                                           UNITED STATES MAGISTRATE JUDGE